IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
GREENVILLE DIVISION

PIERCE MCINTOSH, BETTY DAVIS,
ROY STANFORD, LESTER WILLIAMS,
ANNIE THOMPSON, and FRANK BROWN,					PLAINTIFFS,

VS.								CIVIL ACTION NO. 4:10CV072-P-S

HALEY BARBOUR, in His Official Capacity
as Governor of the State of Mississippi;
JAMES HOOD, in His Official Capacity as
Attorney General of the State of Mississippi; and
THE MISSISSIPPI DEPARTMENT OF
EDUCATION,								DEFENDANTS.

## MEMORANDUM OPINION

These matters come before the court upon the plaintiffs' motion for preliminary injunction [5] and the defendants' motion to dismiss [16]. After due consideration of the motions and the responses filed thereto, the court is prepared to rule.

### I. FACTUAL BACKGROUND

On March 1, 2010 the Mississippi Department of Education ("MDE") began a compliance accreditation audit of the Sunflower County School District ("SCSD") after receiving several serious complaints about the school district's performance.

On April 13, 2010 the MDE completed its audit and concluded that the SCSD failed to comply with all 37 accreditation standards.

On April 15, 2010 the Commission on School Accreditation discussed the SCSD. After hearing from SCSD's superintendent, Pierce McIntosh, and a teacher from the district, the Commission adopted a resolution to recommend to that the MDE find that "an extreme emergency situation exists" in the SCSD. The Commission presented this resolution to the MDE later that day.

On April 16, 2010 the MDE unanimously approved a resolution finding that an extreme emergency situation existed which was brought about by "serious violations of accreditation standards, state law and federal law." Accordingly, the MDE concluded that pursuant to state law, the Sunflower County School District in its then-current form should be abolished. On that same day, Governor Haley Barbour issued a proclamation pursuant to Mississippi Code Annotated §§37-17-6(11)(c)(viii) and 37-17-13 abolishing the Sunflower County School District and removing Superintendent McIntosh and the school board. The school district was then taken over by the MDE.

On June 10, 2010 Superintendent McIntosh, the three school board members Betty Davis, Roy Stanford, and Lester Williams, and qualified electors Annie Thompson and Frank Brown filed the instant lawsuit against Governor Haley Barbour, Attorney General Jim Hood, and the MDE.

On July 15, 2010 the plaintiffs filed an Amended Complaint wherein they assert nine causes of action. Counts 1 through 5 assert claims against all defendants that they violated the Voting Rights Act of 1965 by failing to gain preclearance pursuant to §5 from the U.S. Department of Justice for the abolition of the school district and the removal of the superintendent and school board members, all of whom were elected officials. Count 6 alleges that the defendants denied the plaintiffs equal protection of the law. Counts 7 and 8 allege that the defendants violated the plaintiffs' due process rights by removing them from elected office without a hearing. Count 9 alleges that the defendants intentionally inflicted emotional distress upon Plaintiff McIntosh in their removal of him from office.

On June 22, 2010 the plaintiffs filed a motion for preliminary injunction which seeks an injunction to reinstate the plaintiffs and to enjoin further implementation of what the plaintiffs argue were un-precleared changes to election laws with the abolition of the school district and removal of

the superintendent and school board.

On August 5, 2010 the defendants filed the instant motion to dismiss, arguing that the plaintiffs' §5 claims should be dismissed as moot and that the remaining claims should be dismissed pursuant to the doctrine of sovereign immunity.

## II. DISCUSSION

### A. Plaintiffs' Motion for Preliminary Injunction

In their reply in support of their motion for preliminary injunction, the plaintiffs' conceded on page 1 that: "The Plaintiffs will not respond to defendants' Response as the issue of a 3-judge court is now moot." This is because the defendants received a preclearance letter from the DOJ on August 18, 2010 – after the plaintiffs' motion for preliminary injunction on June 22, 2010 but before the plaintiffs' reply in support of that motion filed on September 3, 2010.[1]

In other words, the plaintiffs have conceded their §5 claims found in Counts 1 through 5. The plaintiffs argue, however, that they are entitled to attorney's fees and expenses because the plaintiffs' lawsuit was the catalyst that caused the defendants to seek and ultimately obtain preclearance from the DOJ.

The defendants are correct that the Fifth Circuit Court of Appeals has rejected the "catalyst theory" for attorney's fees sought under 42 U.S.C. §1988(b) (giving the court discretion to allow such fees to the prevailing party in proceedings seeking vindication of civil rights). *Dearmore v. City of Garland*, 519 F.3d 517, 521 (5th Cir. 2008). More specifically, the Fifth Circuit wrote that the Supreme Court had "rejected the 'catalyst theory,' explaining that a defendant's voluntary change

---

[1] By Order of August 12, 2010 the court stayed the defendants' deadline to respond to the plaintiffs' motion for preliminary injunction for a period not to exceed 30 days to allow the DOJ to review the plaintiffs' §5 submission.

3

in conduct in response to the plaintiff's lawsuit and not a court order, although perhaps accomplishing what the plaintiff sought to achieve, lacks the necessary judicial *imprimatur* to establish prevailing party status.'" *Dearmore*, 519 F.3d at 521 (citing *Buckhannon Bd. & Care Home, Inc. v. W.Va. Dep't of Health & Human Res.*, 532 U.S. 598 (2001)).

Accordingly, the plaintiffs' motion for preliminary injunction and attorney's fees should be denied.

## B. Defendants' Motion to Dismiss

The defendants move for a motion to dismiss under Fed. R. Civ. P. 12(b)(1) (lack of subject matter jurisdiction) and 12(b)(6) (failure to state a claim for which relief can be granted).

### 1. Plaintiff's Section 5 claims

As discussed above, since the plaintiffs concede that the defendants obtained preclearance from the DOJ, and because the court has rejected the plaintiffs' request for attorney's fees, the court concludes that Counts 1 through 5 of the Amended Complaint should be dismissed with prejudice. Therefore, the defendants' motion to dismiss pursuant to Rule 12(b)(6) should be granted in this regard.

### 2. Plaintiff's Remaining Claims

a. Sovereign Immunity

The defendants' primary argument regarding Counts 6 through 9 (equal protection, due process, and intentional infliction of emotional distress claims) is that they are immune to these claims under the doctrine of sovereign immunity as guaranteed by the 11th Amendment to the U.S. Constitution.

The plaintiffs' concede on page 3 of their response brief that Governor Barbour and Attorney

General Hood are immune from suit under the 11th Amendment. Accordingly, Counts 6 through 9 as levied against these two defendants are dismissed with prejudice.

The plaintiffs argue that the Mississippi Department of Education waived sovereign immunity, citing the six factors discussed in *Hudson v. City of New Orleans*, 174 F.3d 677, 681 (5th Cir. 1999). The defendants are correct, however, that the plaintiffs misapprehend the purpose of the six *Clark* factors. Rather than being used to determine whether a state entity has waived sovereign immunity, the *Clark* factors are used to determine whether an entity is an arm of the state. *Williams v. Dallas Area Rapid Transit*, 242 F.3d 315, 318 (5th Cir. 2001) ("When confronted with a government entity asserting Eleventh Amendment immunity as an arm of the state, we apply the test established in *Clark v. Tarrant County*, 798 F.2d 736 (5th Cir. 1986)).

The six *Clark* factors are: "(1) whether the state statutes and case law characterize the agency as an arm of the state; (2) the source of funds for the entity; (3) the degree of local autonomy the entity enjoys; (4) whether the entity is concerned primarily with local, as opposed to statewide problems; (5) whether the entity has authority to sue and be sued in its own name; and (6) whether the entity has the right to hold and use property." *Williams*, 242 F.3d at 319. Though "none of the six factors is dispositive, some are more important than others: The second – the source of funds – is the most important, while the fifth and sixth ... are less so." *Id*.

Having considered the parties' arguments, the court concludes that the factors clearly weigh in favor of the Mississippi Department of Education being an arm of the State of Mississippi – especially the first four factors. The plaintiffs have cited no authority for the proposition that the MDE ceased being an arm of the state – thereby waiving sovereign immunity – simply because it temporarily took over the Sunflower County School District by operation of statute. Accordingly,

since the MDE, as an arm of the State of Mississippi, has not explicitly or implicitly waived its right to sovereign immunity per the 11th Amendment, the remainder of the plaintiffs' claims asserted against the MDE in Counts 6 through 9 should be dismissed with prejudice for lack of subject matter jurisdiction pursuant to Rule 12(b)(1).

b. Plaintiffs' equal protection claim

Alternatively, the court grants the defendants' Rule 12(b)(6) motion to dismiss the plaintiffs' equal protection claim asserted in Count 6.

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "Factual allegations must be enough to raise a right to relief above the speculative level, [and] 'the pleading must contain something more ... than ... a statement of facts that merely creates a suspicion [of] a legally cognizable right of action', on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Twombly*, 550 U.S. at 555.

Stated simply: "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009).

Because the plaintiffs' equal protection claim in Count 6 of the Amended Complaint did not allege specific facts, and because they did not further pursue the matter in briefing, the court concludes that the claim should be dismissed for failure to state a claim above the speculative level.

c. Plaintiffs' due process claims

In Counts 7 and 8 the plaintiffs claim they were denied due process under the 5th and 14th Amendments because they were removed from elected office without notice or a hearing.

When analyzing a due process claim, the court must first determine whether the plaintiff has a liberty or property interest that is entitled to due process protection. *Bd. of Curators v. Horowitz*, 435 U.S. 78, 82 (1978). It is a well-established principle, however, that public officials do not have a property interest or right to hold elected office. *Snowden v. Hughes*, 321 U.S. 1, 7 (1944) ("More than forty years ago this Court determined that an unlawful denial by state action of a right to state political office is not a denial of a right or property or of liberty secured by the due process clause.") (citing *Taylor and Marshall v. Beckham*, 178 U.S. 548 (1900) and *Cave v. State of Missouri ex rel. Newell*, 246 U.S. 650 (1918)).

Plaintiff McIntosh alone argues that his due process claim should not be dismissed because he never received notice or a hearing before removal and (1) he had a property interest in his position as an elected superintendent because he had a contract with the school district and (2) Miss. Code Ann. §37-1-7 mandates that the MDE must notify him of the reasons for his dismissal and give him an opportunity to be heard.

More specifically, McIntosh cites *Smith v. North Bolivar School District*, 2009 WL 3718549 (N.D. Miss. 2009) for the proposition that an employment contract with the school district rendered his position as an elected official a property interest entitled to due process. McIntosh further argues that he was protected by §37-1-7 from removal in the absence of a finding of neglect of duty, incompetency, drunkenness or other official misconduct and was entitled by that statute to notice and an opportunity to be heard.

7

None of the other plaintiffs make arguments in support of their due process claims. Accordingly, plaintiffs Davis, Stanford, and Williams's due process claim found in Count 8 should be dismissed for failure to state claim pursuant to Rule 12(b)(6).

Having considered the parties' arguments, the court concludes that McIntosh did not have a property interest in his position as an elected superintendent despite the purported existence of an employment contract between McIntosh and the school district.

First, as discussed above, public officials do not have a property interest or right to hold elected office. *Snowden v. Hughes*, 321 U.S. 1, 7 (1944); *Taylor and Marshall*, 178 U.S. 548 (1900); *Cave v. State of Missiouri ex rel. Newell*, 246 U.S. 650 (1918)).

Second, the purported contract attached to the plaintiffs' response in opposition to the defendants' motion to dismiss was not attached to the Amended Complaint, was not referenced by the Amended Complaint, nor is it signed by either party. Moreover, it only regards the 2009-10 school year and does not purport to cover the entire elected term of 4 years of a school superintendent.

Third, the purported contract provides in pertinent part: "This contract shall be subject to all applicable policies, resolutions, rules and regulations of the employer and the laws of the State of Mississippi...." Therefore, the purported contract and indeed McIntosh's position as an elected superintendent is subject to the State's statutory right of removal found in Miss. Code Ann. §37-17-13.

Fourth, the situation in *Smith v. North Bolivar School District*, 2009 WL 3418549, *3 (N.D. Miss. 2009), cited by the plaintiffs, is readily distinguishable from the instant case. The employment contract in *Smith* contained a "for cause" standard for termination whereas the purported contract

8

in the instant case contains no such provision. Therefore, the subject contract is still subject to Mississippi law per the terms of the contract and the common law and therefore is subject to §37-17-13's removal procedure.

Finally, the removal of McIntosh from office did not run afoul of Miss. Code Ann. §37-1-7 which requires that a county superintendent be given ten day's notice of a charge and an opportunity to defend when he is removed for "continued neglect of duty, drunkenness, incompetency, or official misconduct." This is because the State removed McIntosh from office via §37-17-13's removal procedure after a finding of an emergency situation. He was not removed for neglect of duty, drunkenness, incompetency, or official misconduct.

Accordingly, the court concludes that Plaintiff McIntosh's due process claim articulated in Count 7 should be dismissed with prejudice for failure to demonstrate a right to recovery beyond speculation.

### III. CONCLUSION

For the reasons discussed above, the court concludes that the plaintiffs' motion for preliminary injunction [5] should be denied and the defendants' motion to dismiss [16] should be granted. Accordingly, a Final Judgment shall issue forthwith,

**THIS DAY** of December 14, 2010.

/s/ W. Allen Pepper, Jr.
W. ALLEN PEPPER, JR.
UNITED STATES DISTRICT JUDGE